**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0338-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

YVONNE WALKER,

    Defendant-Appellant.

_____

Submitted June 4, 2018 — Decided July 17, 2018

Before Judges Whipple and Rose.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Indictment No. 12-
01-0128.

Joseph E. Krakora, Public Defender, attorney
for appellant (Thomas G. Hand, Designated
Counsel, on the brief).

Robert D. Laurino, Acting Essex County
Prosecutor, attorney for respondent (Lucille
M. Rosano, Special Deputy Attorney General/
Acting Assistant Prosecutor, of counsel and
on the brief).

PER CURIAM

    Defendant Yvonne Walker appeals from the June 23, 2016 denial

of her petition for post-conviction relief (PCR).  We affirm.

The facts surrounding the charged offenses are summarized in the direct appeal State v. Walker, No. A-5613-12 (App. Div. Feb. 25, 2015), and we need not repeat them here. We focus our attention on the facts pertaining to plaintiff's allegations in her PCR petition regarding ineffective assistance at her trial for the murder of Cassetta Blount.

On January 20, 2012, an Essex County Grand Jury indicted defendant for: first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); first-degree murder, N.J.S.A. 2C:11-3(a)(1)&(2); first-degree robbery, N.J.S.A. 2C:15-1; fourth-degree unlawful possession of a weapon, a knife, N.J.S.A. 2C:39-5(d); and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d).

On January 22, 2013, the trial court conducted a Miranda[1] hearing but denied defendant's motion to suppress the statement she gave to police. Defendant was present for the suppression hearing, but she asked to leave because she was upset. During direct examination of the first witness, defense counsel asked for a sidebar and stated, "I'm going to ask that [defendant] be allowed to go in the hallway because she's told me . . . she's going to have an outburst. It's going to be an issue at trial . . . . I think she has a right not to be present, so I'm going to suggest

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

that the Court allow her to exercise that right." The judge spoke with defendant: "you have a right not to be present. I understand from your attorney . . . you wish not to be present . . . during the hearing." Defendant said yes and was escorted out.

A jury trial was conducted between January 29 and February 6, 2013. Defendant was present for jury selection, and one of the voir dire questions was whether prospective jurors would be prejudiced against defendant because of her absence from the trial. Further, during trial counsel's opening statement, she addressed the issue directly with the jury, asking them not hold defendant's absence against her.

During trial, defendant was rarely present. On the first day of trial, after the jury was sworn, but before they were instructed, defense counsel requested a break so her client could exercise her right not to be in court for the openings. After the jury instructions, counsel represented to the court, "[defendant] was present for jury selection, . . . but as she did at the time of the <u>Miranda</u> [h]earing she has indicated to me that . . . she chooses not to be present at this time."

Defendant was absent the second day of trial. The transcript is silent about whether defendant had affirmatively renewed her decision not to appear. On the third day of trial, defendant was present when court convened. The trial judge addressed her,

asking, "you're back here again . . .   We're ready to continue with the trial.  Uh, do you wish you be here . . . during the course of the trial, or not?"  Defendant said no, and left the courtroom.

The defendant was not present for final jury instructions, and the record is silent about whether defendant renewed her decision not to appear.  The judge informed the jury:

> As you know, the defendant elected not to testify at trial.  It is her [c]onstitutional [r]ight to remain silent.  You must not consider for any purpose or in any manner in arriving at your verdict the fact that the defendant did not testify.  That fact should not enter your deliberations or discussion in any manner, at any time.  Uh, and the same goes . . . for the times she was not present . . . defendant is . . . presumed innocent whether or not she chooses to testify.

On February 6, 2013, the lawyers appeared before the judge to address an issue about a juror.  Defendant was not present at this hearing, evidenced by the following colloquy:

> Court: . . . Is she here?
>
> Counsel: I don't believe so, Judge.
>
> Court: You . . . want . . . to talk about the juror without her present?
>
> Counsel: That's fine, Judge.

However, later that day, when the jury presented the court with a question, defendant was present.

Defendant was convicted of first-degree murder, theft of movable property, unlawful possession of a weapon, and possession of a weapon for an unlawful purpose. She was acquitted of robbery and felony murder. The record does not indicate whether defendant was present for the verdict.

On March 27, 2013, the trial judge merged the weapons possession charges with the murder charge, and sentenced defendant to forty-five years in prison, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, for the murder conviction, and to five years for the theft charge, to run concurrently. He found no mitigating factors, and found aggravating factors one, three, six, nine, and twelve; the aggravating factors preponderated the mitigating factors. After her release, she will be subject to mandatory parole supervision for five years.

Defendant appealed the conviction, asserting she was deprived of her right to due process and a fair trial because the court: (1) failed to dismiss a deliberating juror for financial hardship, and (2) failed to properly charge the jury on defendant's absence during trial. On February 25, 2015, we affirmed the conviction and sentence for the murder charge, but reversed the conviction for theft, changing it to a disorderly persons theft offense, and remanded for resentencing. Walker, No. A-5613-12 (slip op. at

17). On June 16, 2015, the Supreme Court denied certification. State v. Walker, 222 N.J. 15 (2015).

On August 6, 2015, defendant filed a verified petition for PCR. On January 15, 2016, PCR counsel filed an amended petition on defendant's behalf asserting trial counsel was ineffective because she (1) failed to communicate with defendant and review discovery with her; (2) advised defendant not to attend trial and did not advise her of the dangers of not attending; (3) failed to request the model jury charge regarding her absence from trial; and (4) failed to object to jury instructions not including the above model jury charge.

The PCR judge granted defendant's request for an evidentiary hearing, limited to two issues: (1) the waiver of defendant's appearance at trial, and (2) trial counsel's pre-trial communication with defendant. During the hearing, defendant testified that over the entire time trial counsel had represented her, beginning after her indictment, counsel visited defendant "just three or four times," staying only "[twenty] minutes or less." Defendant alleged counsel never went through discovery with her, and counsel watched portions of her videotaped statement with her, but defendant did not want to see all of the video because it upset her.

A-0338-16T3

When she asked counsel if she had to be present at her trial, counsel told her she did not have to be present at the trial, saying "it's also in your best interest if you're not at your trial because of [the] anger issue. She . . . didn't want no outbursts from me." Counsel did not explain to defendant how it might hurt her case if she were not present or that the jury might misperceive her absence. Defendant did not recall being present for her <u>Miranda</u> hearing, nor asking if she could not be present while her statement was played. Further, defendant did not recall being asked by the court whether she wanted to be present for summations. She also did not remember if she was present for the jury instructions.

Defendant's public defender testified after being assigned to represent defendant, she visited the jail often to speak with defendant, and the length of her visits would "depend on what [they] were talking about." She and defendant had numerous discussions about how to proceed with her defense, and whether defendant would be able to contain herself when hearing the evidence against her.

Counsel expressed concern "there was going to be some type of explosion in front of the jury and we had many discussions about that." She "suggested to [defendant] that . . . if she didn't think she could contain herself, if she didn't think she

could not have an outburst upon hearing different witnesses make allegations against her, that perhaps it would be in her best interest not to be present during the testimony." These conversations happened more than once, and were "ongoing because the trial was ongoing." Ultimately, defendant made the decision not to be present at trial.

When she was not in the courtroom during the trial, defendant stayed in the holding cell at the courthouse, and was present during jury selection so the jury would "know that she was not a fugitive." Counsel "went into the holding cell to speak to [defendant] on every break, at lunchtime, morning break, afternoon break . . . [and] tried to . . . keep her informed to make her feel that she knew what was going on despite the fact that she wasn't in the courtroom."

Counsel requested a jury instruction to educate the jurors about defendant's right to not have her absence held against her. The instruction given was "not exactly what [she] requested," however, the jury was told they were not to hold defendant's absence against her.

On June 30, 2016, the judge denied defendant's petition for PCR. The judge found credible trial counsel's testimony that her meetings with defendant were longer than twenty minutes, and that she had concerns over defendant's potential for negative and

damaging reactions to testimony. However, it was not apparent counsel informed defendant of the risks of not being present at trial, and the record did not support a finding that defendant made a knowing and intelligent waiver of her right to be present at trial. Defendant was asked only twice about her desire not to be present, and the PCR judge found the trial court did not meet its obligation "to question defendants about their understanding of the nature and consequences of their absence from the trial."

Ultimately, the PCR judge found although trial counsel's incomplete advice regarding defendant's absence from trial rendered her assistance ineffective, defendant did not satisfy the second prong of the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). Defendant had demonstrated trial counsel was ineffective, but she did not demonstrate a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different, because of the strong evidence against her. State v. Fritz, 105 N.J. 42, 52 (1987) (quoting Strickland, 466 U.S. at 694).

Defendant also argued counsel's alleged failure to insist on the model jury charge relating to defendant's absence from trial rendered her assistance ineffective. The PCR judge acknowledged the issue had already been addressed on direct appeal and similarly rejected the argument finding counsel informed the jury of its

obligations regarding defendant's presence or absence in her opening statement, and in her summation, and there were questions in the jury voir dire about a defendant being absent from her own trial. Moreover, defendant had not proven she was prejudiced because of the jury instruction. This appeal followed.

On appeal, defendant argues the following:

THE TRIAL COURT ERRED IN DENYING [DEFENDANT'S] PETITION BECAUSE [DEFENDANT'S] TRIAL COUNSEL WAS INEFFECTIVE.

    A. [Defendant] Was Prejudiced By Trial Counsel's Waiver of [Defendant's] Various Appearances in Court.

    B. Trial Counsel Was Ineffective When She Failed To Communicate With [Defendant], Which Denied [Defendant] the Opportunity to Participate In Her Defense.

    C. Trial Counsel Was Ineffective When She Failed To Request The Model Jury Instruction Related To [Defendant's] Failure To Attend Trial.

Our review of a PCR claim after a court has held an evidentiary hearing "is necessarily deferential to [the] PCR court's factual findings based on its review of live witness testimony." State v. Nash, 212 N.J. 518, 540 (2013). On appeal from denial of a petition for PCR, our review is limited, affording deference to the motion judge's findings so long as they are "supported by sufficient credible evidence in the record." Ibid.; see State v. Elders, 192 N.J. 224, 244 (2007) ("A trial court's

findings should be disturbed only if they are so clearly mistaken that the interest of justice demand intervention and correction.") (citation omitted). We defer to the PCR judge's factual findings "which are substantially influenced by his opportunity to hear and see the witnesses and to have the feel of the case." Elders, 192 N.J. at 224 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

"[PCR] is New Jersey's analogue to the federal writ of habeas corpus," State v. Preciose, 129 N.J. 451, 459 (1991), affording an adjudged criminal defendant a "last chance to challenge the fairness and reliability of verdict." Nash, 212 N.J. at 540 (citation omitted); see R. 3:22-1. A defendant must establish the right to PCR by a preponderance of the credible evidence. Preciose, 129 N.J. at 459. In order to satisfy this burden, the defendant "must do more than make bald assertions that he [or she] was denied the effective assistance of counsel. He [or she] must allege facts sufficient to demonstrate counsel's alleged substandard performance." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

To establish ineffective assistance of counsel, defendant must satisfy a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the

Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

[Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58 (adopting the standard in Strickland).]

Defendant argues her trial counsel was ineffective for not requesting the model jury instruction on defendant's absence from the trial, and for inadequately communicating with her.

A court assesses counsel's performance with extreme deference, "requiring 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 688-89). "To rebut that strong presumption, [defendant] must establish . . . trial counsel's actions did not equate to sound trial strategy." State v. Castagna, 187 N.J. 293, 314 (2005) (citation omitted). "Mere dissatisfaction with a counsel's exercise of judgment is insufficient to warrant overturning a conviction." Nash, 212 N.J. at 542 (citing State v. Echols, 199 N.J. 344, 358 (2009)). This standard applies "not only to counsel's performance in conducting the trial itself but to all stages of the prosecution from the very outset of the

representation." Pressler & Verniero, <u>Current N.J. Court Rules</u>, comment 1.1 on <u>R.</u> 3:22-2.

The PCR judge determined trial counsel was a credible witness, and she adequately communicated with defendant. This determination, and the denial of defendant's claim on these counts, is entitled to our deference without a showing that these findings "are so clearly mistaken that the interest of justice demand intervention and correction." <u>Elders</u>, 192 N.J. at 244 (citation omitted).

Additionally, defendant asserts the PCR court erred in finding she was not prejudiced by her absence from the trial, because it denied her the opportunity to communicate with counsel, to assist in her defense, and assist with cross-examination of witnesses.

To prove prejudice, "actual ineffectiveness . . . must [generally] be proved." <u>Fritz</u>, 105 N.J. at 52. Petitioner must show the existence of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Ibid.</u> "[N]ot every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding. <u>Strickland</u>, 466 U.S. at 693 (citation omitted).

Prejudice may be presumed only when "the accused is denied counsel at a critical stage of [her] trial" or "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." United States v. Cronic, 466 U.S. 648, 659, 667-68 (1984); see also State v. Savage, 120 N.J. 594, 639 (1990).

Here, defendant had the benefit of trial counsel during every critical stage of her trial, as counsel was present from just after the indictment through sentencing. There was no showing trial counsel did not "subject the prosecution's case to meaningful adversarial testing." Cronic, 466 U.S. at 667-68. Trial counsel cross-examined every witness introduced by the state, and made every effort to attempt to show that defendant acted in passion/provocation instead of knowingly or purposefully. There is no presumption of prejudice stemming from counsel's trial performance here.

Nor has defendant made a showing that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Fritz, 105 N.J. at 52. Though the jury was exposed to defendant at jury selection, and despite the very real danger that defendant would have had a violent outburst in front of the jury, defendant asserts that seeing her at trial would have "humanized" her and made it more likely the jury would find passion/provocation instead of

14

first-degree murder.  However, there was substantial evidence against defendant, including her statement, the witness testimony, and the DNA evidence.  We note the strategy employed by trial counsel was at least partially successful, as defendant was acquitted of robbery and felony murder.

Moreover, we rejected the issue of counsel's alleged failure to insist on the model jury charge relating to defendant's absence from trial on direct appeal, and we need not address it anew here.

In conclusion, the PCR judge made a determination, detailed in a lengthy and thorough written opinion, that defendant was not prejudiced by any error made by trial counsel.  Defendant has not made a showing that this determination is "so clearly mistaken that the interest of justice demand intervention and correction." Elders, 192 N.J. at 244.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION